IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNETTE GOODMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-0627 |
| ARCHBISHOP CURLEY HIGH SCHOOL, INC. and ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | * * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiff Annette Goodman ("Plaintiff" or "Goodman") commenced this action against Defendants Archbishop Curley High School, Inc. ("Curley") and the Roman Catholic Archbishop of Baltimore ("Archdiocese") (collectively "Defendants"), alleging retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX") and 34 C.F.R. § 100.7.  *See* Compl., p. 10, ECF No. 1. Subsequently, Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 23), arguing, *inter alia*, that Plaintiff's suit was barred by Title IX's religious organizations exemption, 20 U.S.C. § 1681(a)(3).  *See* Mem. Supp. Mot. to Dismiss, p. 12, ECF No. 23-1. Following a February 5, 2016 hearing, this Court denied Defendants' Motion to Dismiss via Memorandum Opinion (ECF

1

No. 27) and Order (ECF No. 28) dated February 26, 2016. *See Goodman v. Archbishop Curley High School, Inc., et al.*, ---F. Supp. 3d---, No. RDB-15-0627, 2016 WL 759187, at *9 (D. Md. Feb. 26, 2016).

Currently pending before this Court is Defendants' Motion to Certify Interlocutory Appeal (ECF No. 32), in which Defendants request that this Court certify its February 26, 2016 Order (ECF No. 28) for immediate interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Defendants' Motion to Certify Interlocutory Appeal (ECF No. 32) is DENIED.[1]

## BACKGROUND[2]

In August of 2013, Plaintiff Annette Goodman ("Plaintiff" or "Goodman") began working as a school librarian at Defendant Archbishop Curley High School ("Curley"), an all-boys catholic high school administered by Defendant Roman Catholic Archbishop of Baltimore ("Archdiocese") (collectively "Defendants"). Compl. at ¶ 7, ECF No. 1. In April of 2014, Goodman indicated to school administrators her suspicion that a fellow Curley teacher, Lynette Trotta ("Trotta"), was involved in a sexual relationship with a Curley student (the "Student"). *Id.* at ¶¶ 10-19. She

---

[1] Because this Court will not certify its February 26, 2016 Order for interlocutory appeal to the United States Court of Appeals for the Fourth Circuit, Defendants' pending Motion to Stay Proceedings Pending Interlocutory Appeal (ECF No. 33) is also DENIED.

[2] The facts of this case were set forth fully in this Court's Memorandum Opinion of February 26, 2016. *See Goodman*, 2016 WL 759187 at *1-3.

2

contends that the Curley administration did not seem surprised by her allegations, but rather responded to her report with anger and indifference, concerned primarily with the negative attention this incident might attract to the school. *Id.* at ¶ 19-30. Goodman was terminated from her position shortly thereafter on the basis that she had not immediately notified her superiors of her suspicions.

Plaintiff filed a complaint in this Court (ECF No. 1) claiming retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX") and 34 C.F.R. § 100.7. *Id.* at p. 10. Specifically, Goodman alleges that Trotta's sexual abuse of the Student and Curley's inadequate response violated Title IX, that Defendants had knowledge of Trotta's inappropriate behavior but, until her report, showed deliberate indifference, and that this deliberate indifference exposed Defendants to civil liability under Title IX. *Id.* at ¶¶ 41, 42-44, 45. Therefore, Goodman claims, Defendants retaliated against her after she reported Trotta's behavior by suspending her without pay, terminating her employment, informing her that they would share their reasons for termination with potential employers, publicly blaming her, and ruining her reputation. *Id.* at ¶ 46.

Defendants have indicated that they fired Goodman not because she exposed suspected child abuse, but because she admittedly waited weeks[3] before doing so.

---

[3] Goodman alleges that the Student's best friend told her on March 6, 2014 that the Student had sex with Ms. Trotta, that she discussed the allegation with Student, who confirmed on March 12, 2014 that he was in a relationship with a teacher that was "currently making [him] feel uncomfortable," and that

3

Mem. Supp. Defs.' Mot. to Dismiss, p. 1-2, ECF No. 23-1. Defendants proffer that Canon Law, in accordance with their own policies, "requires immediate reporting of child sex abuse." *Id.* Accordingly, Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 23), seeking dismissal of Plaintiff's Title IX retaliation claim on the grounds that it was barred by, *inter alia*[4], Title IX's religious organizations exemption.

Title IX's religious organizations exemption provides that "this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3). However, the Supreme Court of the United States in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) has characterized the exceptions to Title IX's broad prohibition on discrimination as "narrow." *Jackson*, 544 U.S. at 173–175 ("Title IX, . . . subject to a list of *narrow* exceptions not at issue here, broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex' " . . . "Title IX is a broadly written general prohibition on discrimination, followed by *specific, narrow exceptions* to that

---

the Student implicated Trotta specifically on March 18, 2014, but that she did not inform Curley administrators of the suspected abuse until April 1, 2014. *See Goodman*, 2016 WL 759187, at *4, n. 3.

[4] In its February 26, 2016 Memorandum Opinion denying Defendants' Motion to Dismiss (ECF No. 23), this Court rejected Defendants' arguments under Title IX's religious organizations exemption, the First Amendment to the United States Constitution, and the Religious Freedom Restoration Act. *See Goodman*, 2016 WL 759187 at *5-9. However, in the pending Motion to Certify Interlocutory Appeal (ECF No. 32), discussed *infra*, Defendants argue only that this Court's interpretation of the Title IX religious organizations exemption satisfies the criteria for interlocutory appeal. *See* Mot. to Certify, p. 4, ECF No. 32.

broad prohibition") (emphasis added). Additionally, the United States Court of Appeals for the Sixth Circuit in *Doe v. Salvation Army in U.S.*, 685 F.3d 564 (6th Cir. 2012) specifically identified Title IX's religious organizations exemption as narrow. *See Doe*, 685 F.3d at 572 (referencing "*narrow* but express exceptions relating explicitly to religious organizations in the amendments to Title IX . . . .") (emphasis added).

In their Motion to Dismiss (ECF No. 23), Defendants took the position "that Title IX's religious organizations exemption bars any employment discrimination or retaliation claim [from proceeding] against them if they define their actions as tenets of their religion." *Goodman*, 2016 WL 759187 at *5. It is undisputed that Goodman was employed in a non-ministerial capacity as the school librarian. Defendants argued that the Title IX exemption barred Plaintiff from taking discovery on her claims or from challenging their religiously-based justification for her termination as pre-textual, pursuant to the *McDonnell Douglas* burden-shifting analysis[5]. *Id*. This Court rejected Defendants' position, citing the well-recognized importance of retaliation claims to Title IX's enforcement. *See Jackson*, 544 U.S. at 180. This Court observed that "no court [since *Jackson*] has . . .

---

[5] Where, as in this case, the record contains no direct evidence of retaliation, a plaintiff's retaliation claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, once a *prima facie* case of retaliation is established, the burden of production shifts to the defendant to offer a legitimate, non-retaliatory reason for its adverse employment action. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). If the employer fulfills this reciprocal duty, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual and that her termination was in fact retaliatory. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993).

5

held that Title IX's religious organizations exemption precludes a Plaintiff from raising a Title IX retaliation claim simply because the employer has proposed a religious reason for her termination." *Goodman*, 2016 WL 759187 at *7.

On the contrary, courts have long-recognized that simply allowing an employment discrimination or retaliation claim to survive a motion to dismiss and to proceed under the *McDonnell Douglas* scheme does not threaten a Defendant's religious interests or freedoms. *See DeMarco v. Holy Cross High School*, 4 F.3d 166, 170-71 (2d Cir. 1993) ("[I]n those cases where a defendant proffers a religious purpose for its allegedly discriminatory employment action, a plaintiff will usually be able to challenge as pretextual the employer's justification . . . ."); *Redhead v. Conference of Seventh-day Adventists*, 566 F. Supp. 2d 125, 134 (E.D.N.Y. 2008) ("an employer's simple assertion of a religious motive usually will not prevent a reviewing court from asking whether that motive 'was in fact pretext' within the meaning of *McDonnell Douglas*." (quoting *DeMarco*, 4 F.3d at 171)). Therefore, in a February 26, 2016 Memorandum Opinion and Order, this Court held that Title IX's religious organizations exemption did not

bar Plaintiff's retaliation claim from proceeding under the *McDonnell Douglas* framework. Defendants now seek interlocutory appeal of this Court's Order.

**STANDARD OF REVIEW**

Section 1292(b) of Title 28 of the United States Code permits a United States District Court to certify an order for interlocutory appeal where that order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" (3) "and from which immediate appeal may advance the ultimate termination of the litigation." *Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015) (internal quotations omitted). "The decision to certify an interlocutory appeal is firmly in the district court's discretion." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015).

"Unless all of the statutory criteria are satisfied, however, 'the district court may not and should not certify its order . . . for an immediate appeal under [S]ection 1292(b).' " *Id.* (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)). Courts "should grant this 'extraordinary remedy' only in 'exceptional circumstances' where early appellate review would avoid a 'protracted and expensive litigation' process." *Randolph v. ADT Sec. Servs., Inc.*, No. DKC 09-1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012) (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *2 (4th Cir. 1989) (unpublished opinion)). Section 1292(b) "should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989).

## ANALYSIS

Defendants argue that this Court's February 26, 2016 Order "regarding Title IX's religious exemption meets all three criteria for certification."  Mot. to Certify, p. 4, ECF No. 32.  However, while this Court's interpretation of Title IX's religious organizations exemption may satisfy the first and third criteria for interlocutory appeal, Defendants have failed to demonstrate a "substantial ground for difference of opinion" on the issue.

I. **The Interpretation of Title IX's Religious Organizations Exemption is a Controlling Question of Law**

An "issue is plainly a 'question of law' within the meaning of 28 U.S.C. § 1292(b), insofar as it is 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine'—as opposed to 'whether [a] party opposing summary judgment has raised a genuine issue of material fact.' " *Price v. Atlantic Ro-Ro Carriers, Inc.*, 2014 WL 7358729, at *1 (D. Md. Dec. 22, 2014) (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013)).  In *Kennedy v. Villa St. Catherine, Inc.*, No. PWG-09-3021 (WDQ), 2010 WL 9009364, at *1 (D. Md. June 16, 2010), this Court held that an "Order address[ing] whether [Title VII's religious exemption], 42 U.S.C. § 2000e–1(a), exempts a religious institution from liability when the [purported] discrimination . . . takes the form of religious harassment" involved a controlling question of law.

Like the Order in *Kennedy*, this Court's Order of February 26, 2016 "address[ed]" the scope of the Title IX religious organizations exemption.  In its

Motion to Dismiss, Defendants argued for an interpretation of the exemption as "bar[ring] any employment discrimination or retaliation claim against them if they define their actions as tenets of their religion." *Goodman*, 2016 WL 759187 at *5. However, this Court observed that the "[t]here is a noticeable lack of case authority supporting such a *broad application* of the religious exemption" and that "[f]ew courts have addressed the *breadth of Title IX's religious exemption* and none . . . in the context of employment discrimination or retaliation claims." *Id*. (emphasis added). This Court further observed that prior cases have interpreted Title IX's religious exemption as "narrow" and that the available case law "suggest[s] that Title IX's 'narrow' religious organizations exemption *should not be read* as supporting dismissal of Plaintiff's claims . . . ." *Id*. (emphasis added).

Despite this language clearly interpreting "the meaning of a statutory or constitutional provision," *see Price*, 2014 WL 7358729 at *1, Plaintiff contends that this Court's Order did not address a purely legal question like that in *Kennedy*. Pl.'s Opp'n., p. 6, ECF No. 39. On the contrary, Plaintiff argues, this Court concluded that "the case presented the opportunity for a *factual* inquiry into Defendants' non-retaliatory justification for firing Ms. Goodman . . . which will require the Court to apply Title VII's *McDonnell Douglas* framework." *Id*. (emphasis added). However, Defendants correctly note that the denial of any motion to dismiss in a civil case, even when based on a purely legal question of statutory interpretation as in *Kennedy*,

9

necessarily opens the door to discovery and trial on the factual disputes. *See* Def.'s Reply, p. 4, ECF No. 41. This does not change the fact that a controlling issue in this Court's February 26, 2016 Memorandum Opinion and Order was whether Title IX's religious organizations exemption should be "read" as barring Plaintiff's suit from proceeding under the *McDonnell Douglas* framework. Accordingly, this Court's February 26, 2016 Order did involve a controlling question of law.

II.     **Appeal May Advance the Ultimate Termination of this Litigation**

" 'In determining whether certification will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.' " *Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No. CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013)). "[T]o meet this requirement, the appellate court's resolution of the controlling question of law should 'serve to avoid a trial or otherwise substantially shorten the litigation.' " *Kennedy*, 2010 WL 9009364 at *4. In the *Kennedy* case, this Court held that appeal "may advance" the ultimate termination of that litigation. *Id.* This Court reasoned that if the United States Court of Appeals for the Fourth Circuit "conclude[d] that 42 U.S.C. § 2000e–1(a) exempts a religious institution from liability when the [purported]

discrimination . . . takes the form of religious harassment, then summary judgment should have been granted on all counts, and litigation [would] end, without need for a trial and the associated costs and time commitments." *Id*. "It is immaterial that other possible outcomes exist; it is enough that appeal may lead to a possible terminus for the case." *Id*. (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

Here, Defendants seek immediate appeal of this Court's February 26, 2016 Order denying their Motion to Dismiss (ECF No. 23). Like in the *Kennedy* case, if the Fourth Circuit were to reverse this Court's Order and find that Title IX's religious exemption does bar Plaintiff's suit from proceeding to discovery, then Plaintiff's action would be dismissed "and litigation [would] end, without need for a trial and the associated costs and time commitments." *See Kennedy*, 2010 WL 9009364 at *4. However, as discussed *infra*, Defendants argue for a novel interpretation of the Title IX religious organizations exemption. They have cited no case, nor is this Court aware of any, holding that the exemption has the effect of barring any employment discrimination or retaliation claim, by even a non-ministerial employee, from proceeding against a religious employer who has offered a religious justification for its actions. On the contrary, multiple courts have recognized that simply allowing an employment discrimination or retaliation claim to survive a motion to dismiss and to proceed under the *McDonnell Douglas* scheme does not threaten a Defendant's religious

11

interests or freedoms. *See, e.g., DeMarco*, 4 F.3d 166 at 170-71. Therefore, it is very likely in this case that interlocutory appeal would only delay the litigation process as opposed to "shorten[ing] the litigation." *Kennedy*, 2010 WL 9009364 at *4.

### III. Defendants Have Failed to Demonstrate a Substantial Ground for Difference of Opinion as to this Court's Interpretation of the Title IX Religious Organizations Exemption

The "legislative history of 28 U.S.C. § 1292(b) indicates that the statutory prerequisite of 'substantial ground for difference of opinion' is satisfied only when there is 'substantial doubt' that the district court's order was correct." *See Kennedy*, 2010 WL 9009364 at *2. (internal quotations omitted). This Court has previously noted that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Lynn*, 953 F. Supp. 2d at 624. However, "when a matter of first impression also had other grounds for difference of opinion . . . , district courts in this circuit have certified the issue for interlocutory appeal." *Kennedy*, 2010 WL 9009364 at *2. "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Randolph v. ADT Sec. Servs., Inc.*, No. DKC 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012). "In other words, for interlocutory appeals, 'it matters not whether the lower court simply got the law wrong,' but 'whether courts themselves disagree as to what the law is.' " *In re Nichols*, No. TDC-14-0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014).

Defendants contend that a "substantial ground for difference of opinion" exists as to this Court's interpretation of Title IX's religious organizations exemption in its February 26, 2016 Memorandum Opinion and Order. They rely heavily on *Kennedy v. Villa St. Catherine's, Inc.*, discussed *supra*, in which this Court held that a "substantial ground for difference of opinion" existed as to "whether [Title VII's religious exemption], 42 U.S.C. § 2000e–1(a), exempts a religious institution from liability when the religious discrimination it purportedly commits takes the form of religious harassment." *See Kennedy*, 2010 WL 9009364 at *1-3. However, the *Kennedy* case is distinguishable from this case in several ways. While the religious exemption issue in *Kennedy* came before this Court on a Motion for Summary Judgment, this Court interpreted Title IX's religious organizations exemption in this case in the context of a Motion to Dismiss, which it explicitly declined to convert to a Motion for Summary Judgment given that Plaintiff had not yet had an opportunity to take discovery. *See Goodman*, 2016 WL 759187 at *9, n. 6. Defendants in this case contend that the Title IX religious organizations exemption bars Plaintiff's claim from even reaching discovery on the question of pretext. The fact that Defendants argue this religious exemption is a complete bar to Plaintiff's action on a Motion to Dismiss is precisely what makes it so novel.

Additionally, this Court in *Kennedy* found that a "substantial ground for difference of opinion" existed specifically because the issue before the Court "[was] a

matter of fundamental rights." *Kennedy*, 2010 WL 9009364 at *3. The Plaintiff in *Kennedy* claimed that she was fired by her catholic employer for wearing clothes that were a " 'function of her religion' as a member of the Church of the Brethren." *See Kennedy v. Villa St. Catherine's, Inc.*, 709 F. Supp. 2d 404, 406 (D. Md. 2010), *rev'd in part sub nom. Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011). "Plaintiff alleged that the Director told her that her clothes were 'inappropriate in a Catholic institution . . . made the residents' family members uncomfortable, . . . and that Plaintiff should conform to a more traditional mode of dress.' " *Id*. In contrast, Goodman has not alleged that she experienced religious harassment, but rather brings a single retaliation claim, alleging that she was retaliated against after engaging in a reporting activity protected under Title IX. This Court in *Kennedy* explicitly distinguished the facts of that case from cases "unquestionably [involving] employment decision[s]," in which "the plaintiff did not claim harassment." *Kennedy*, 2010 WL 9009364 at *3. This Court observed that the outcome in *Kennedy* "hinge[d] on the fact that Ms. Kennedy's claims [were] for harassment and retaliatory discharge stemming from harassment." *Id*.

Furthermore, the Plaintiff in *Kennedy* agreed that the scope of Title VII's religious exemption was a " 'murky area,' " but that the "possible differences of opinion were not 'so substantial as to meet the second prong [for certification].' " *Id*. at *2. Defendant had cited case law to support its request, but Plaintiff contended it

14

"[did] not aid it in creating a substantial ground for difference of opinion." *Id*. Unlike in *Kennedy*, Plaintiff has not admitted that the issue before this Court was "murky," nor did Defendants cite any case law directly supporting a reading of the Title IX religious organizations exemption as broad as the one they proposed. Here, Defendants acknowledge that "there is no applicable precedent interpreting Title IX's religious organizations exemption," and, as Defendants admit in their brief, "a lack of precedent does not necessarily establish a substantial ground for difference of opinion . . . ." Mot. to Certify, p. 8, ECF No. 32.

Alternatively, Defendants contend that this Court has misinterpreted the phrase "application of this subsection" in Title IX's religious organizations exemption as referring to "the litigation process" as opposed to "the underlying substantive employment decision." *Id*. at 8. According to Defendants, in denying their Motion to Dismiss this Court operated under the assumption that "Defendants are exempt only if subjecting them to the *McDonnell Douglas* analysis would be inconsistent with their religious tenets," whereas this Court should have concluded that "Defendants are exempt if retaining/reinstating Plaintiff would be inconsistent with their religious beliefs." *Id*. Nowhere in the February 26, 2016 Memorandum Opinion did this Court make this distinction that Defendants now read into the decision. Additionally, Defendants cite no case discussing this distinction nor any case supporting their interpretation of "application of this subsection" as opposed to the interpretation this

Court supposedly adopted. Accordingly, they have failed to demonstrate that "courts themselves disagree as to what the law is," as required to satisfy this criterion for interlocutory appeal.[6] *See In re Nichols*, 2014 WL 4094340 at *3.

Defendants further contend that "a substantial ground for a difference of opinion exists as to how Plaintiff can question and in what ways a jury can determine whether a particular activity is inconsistent with Defendants' religious tenets." Mot. to Certify, p. 10, ECF No. 32. However, this Court did not hold in its February 26, 2016 Memorandum Opinion that Title IX's religious organizations exemption permits "a jury [to] determine whether a particular activity is inconsistent with Defendants' religious tenets." As discussed *supra*, this Court simply held that the Title IX religious organizations exemption did not bar Plaintiff from seeking discovery and challenging Defendants' religious justification for her termination as pretextual by, for example, uncovering evidence that Defendants' religious tenets have not been uniformly applied[7]. *See Goodman*, 2016 WL 759187 at *4. Defendants cite no case authority

---

[6] Defendants further argue that this Court's "interpretation effectively reads the religious exemption out of the statute by having a religious defendant go through the same analysis as a non-religious defendant in any Title IX or routine employment discrimination claim." Again, however, they fail to cite any authority in support of their contention. They have alleged only a purported disagreement between themselves and this Court, as opposed to a disagreement between the courts constituting "substantial grounds for difference of opinion."

[7] Defendants additionally contend that "[t]he plain language of Congress's religious exemption to Title IX applies when Title IX would be inconsistent with the school's religious tenets, and contains no further limiting language such as a requirement that each religious tenet must be 'uniformly' applied to qualify. 20 U.S.C. § 1681(a)(3)." Mot. to Certify, p. 9, ECF No. 32. However, as discussed *supra*, this Court has cited case authority indicating that a Defendant in a retaliation case may legitimately challenge the uniform application of an employer's religious justification without challenging that employer's religious beliefs. *See, e.g., DeMarco,* 4 F.3d at 170–171. Defendants cite no authority to the

16

demonstrating a substantial ground for difference of opinion on this issue. On the contrary, this Court has cited *DeMarco,* 4 F.3d at 170-71, *inter alia*, for the proposition that "[t]he pretext inquiry . . . normally focuses upon factual questions such as . . . whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination . . . . [I]n those cases where a defendant proffers a religious purpose for its allegedly discriminatory employment action, a plaintiff will usually be able to challenge as pretextual the employer's justification without calling into question the value or truthfulness of religious doctrine." *See Goodman*, 2016 WL 759187 at *6. For these reasons, Defendants have failed to demonstrate a substantial ground for difference of opinion. Accordingly, Defendants' pending Motion to Certify Interlocutory Appeal (ECF No. 32) is DENIED.

## CONCLUSION

For the reasons stated above, it is this 18th day of July, 2016, ORDERED that:

1. Defendants' Motion to Certify Interlocutory Appeal (ECF No. 32) is DENIED;

2. Defendants' Motion to Stay Discovery Pending Interlocutory Appeal (ECF No. 33) is DENIED; and

---

contrary and, accordingly, fail to establish a "substantial ground for difference of opinion" on this point.

3. The Clerk of this Court transmit a copy of this Memorandum Order to Counsel.

                                                                          /s/_____
                                                           Richard D. Bennett
                                                           United States District Judge